Mr. Justice Nott
delivered the opinion of the Court.
I consider it unnecessary to examine the numerous authorities resorted to by the counsel in this case for the purpose of ascertairig the powers of the Attorney-General, in relation to the granting of informations. It appears that in England informations are of two kinds. Those filed ex-officio, by the Attorney-General, (1 Chitty Crim. Law, *57 843,) and those which, by leave of the court, are prose» cuted in the name of the coroner, or master of the crown 'office. In those carried on by the Attorney-General, ex-officio, and on bis mere motion, it is not usual for the court to interfere : But where they are filed at the instance of any individual, it is usual to obtain leave of the court. (Rex vs. William Davis Phillips. 4 Burrow, 2039. The same vs. Phillips et al. 3 Do. 1565.) In this state, I apprehend, all informations must be carried on in the name of the Attorney-General or solicitor. And it is at-least doubtful whether tinder our constitution, any iniormation for a misdeameanor purely of a public nature, and not to try some private right, can be sustained. When I speak oí a private right, I do not mean the right of the party applying for the information only ; but of the person accused, who may not only be punished for the misdemeanor, but ousted of his office. But be that as it may, I have no doubt but that the Attorney-General may, in any case, apply to the court'for directions, and that the court, although, perhaps, it cannot order, may aid him with its advice. There may be many cases where it would seem peculiarly proper, and some where it would be absolutely necessary, that it should be done. The Attorney-General may stand in such relation to the party against whom an information is required, as not to be able to trust his own judgment; or in such that it ought not to be trusted by the 'State. Such a proceeding might b^required against the Attorney-General himself, in which case he could not act. I am satisfied, therefore, that the course which has been observed on this occasion has been proper and correct, and the only one perhaps, which, under all the circumstances of the case, ought to have been pursued.
Speaking of the several kinds of information, Bacon says, informations in the nature of a quo warranto may be, and frequently are exhibited with leave of the Court for usurping privileges, franchises, &c. (3 Bacon, Title Information A.) But the fact of having obtained leave of the Court . *58 does not necessarily imply that it was done against the consent of the Attorney-General. Indeed I consider the information in this case as filed with his leave. The act of referring it to the Court was giving his consent, if, in the-opinion of the Court sufficient grounds were exhibited.
2d. Under the second ground, a variety of distinct questions have been submitted :
1st. Whether the merits of the case ought to be heard on the application for an information, or should be reserved until the answer of the defendant be filed.
2d. Whether an information, in the nature of a quo -war-ranto, may be granted against an officer commissioned under the authority of the state, or only against officers of corporations ?
3d. Whether the tribunal for the trial of contested elections ought to be composed of all the managers, or whether a majority constitutes a quorum for that purpose ?— And if a majority, whether the concurrence of a majority of the sitting members be sufficient to make a decision, or whether a majority of the whole must concur ?
•4th. Whether the decision of that tribunal is conclusive upon this Court ?
1st. On an application to the discretion of the Court for an information in the nature of a quo warranto, the grounds of the motion must be distinctly stated; and the party against whom the proceeding is requested ought first to be served with a rule to shew cause. (3 Bacon, Title Information D.) The motion in this case must be considered in the nature of a rule to shew cause. If, admitting the truth of all the allegations contained in the' suggestion, there is no ground on which the prosecution can be sustained, the information ought not to be granted j and that question can as well be tried on the rule to shew cause, as on the information. In a question of this sort, where the public interest, as well as that of the individual, may be deeply concerned in the speedy decision of the question, the Court will avail themselves of the earliest opportunity to effect the object. If the suggestion contain suffi *59 cient matter to authorize an information, the Court ought to grant the motion, without having the merits discusstd. All the grounds stated in this suggestion relate to questions which were decided by the managers, while acting in a judicial capacity; except that which relates to the organization of the Court itself. Whether the question ought to be decided at this stage of the proceeding, will depend then upon the vie.w which the Court shall take of the third and fourth grounds above stated.
2d. On the second question, I shall make but few observations in addition to what I have said on that point,' in the case of Green and Shackleford, decided1 in this Court. (Vide also the King vs. Mein, 3 Term. 598.)
Were it even admitted that informations in the nature of a quo -warranto are, in England, confined to officers of corporations, it would not follow that such a proceeding . may not be had here to try the right of an officer commissioned under the authority of the State. In our republican government, the power of appointment is a delegated power. It is seldom accompanied with the power to remove. The right of sovereignty here is in the people, and not in the executive. The usurpation of an office is not an invasion of executive prerogative, but of the rights of the people ; and the only method by which their rights can be protected, is through the instrumentality of the Courts of Justice. If the appointing power violate the constitution or the law of the land, it belongs to this Court to correct the evil. In the case of Hays and Harley, the Court declared the act of the Legislature, under which Hays was elected, void and ousted him of his office; and in the case of the State vs. Jeter, who was elected by the Legislature, *th'e Court allowed this proceeding for the purpose of try-iifglhe constitutionality of his election. The constitution is the supreme law of the land, equally obligatory uppn the Legislature and individuals ; and if a person is inducted into office by an unconstitutional law, this Court will declare it inoperative and void.
3d. The next is a more important and difficult question *60 to decide. Whether a delegated authority should he exercised by all the persons to whom the power is delegated, or by a majority, does not appear 'to be settled upon any feed or established principle. It would seem to me that i't must always be a question of expediency or necessity, or of positive compact. I think however, that it is now pret-ty well understood that where a trust is of a public nature, a majority may act for the whole, (The King vs. Beeston. 3 Term R. 592. Grindley vs. Barker, 1 Bos. & Pull. 229. Green vs. Miller, 6 Johnson, 39.) In cases where the body consists ói an indefinite number o! persons, as in all democratic governments, a majority -from necessity must govern. The same necessity exists (_if not to the same extent) in all numerous bodies. Mr. Locke say’s. “ where any number of men have consented to make one community or government, they are thereby presently incorporated, and make one body politic, wherein a majority have a right to act and to conclude the rest.” 2d vol. 255, § 95, Because, he says, the “ consent (of the whole) is next to impossible ever to be had, when we consider the infirmities of health and avocations of business, which in a number, though much less than that of a commonwealth., will necessarily keep many’ away from a public assembly.” Id. §98. See also Grotnis, 204, B. 2, C. 5. 1 Brown's Civil Law, 147. 2 Rutherforth's Institutes, 1, 2. It seems also to be congenial with the spirit and practice of all our republican institutions. The constitution of this State and of the United States, require only a majority to constitute a quorum to do business, and I presume that rule would have been adopted, ii they had been silent on the subject, I will mention one other body, which, from the persons and characters of whom it is composed, is of no inconside rabie authority. I mean the Board of Trustees of the South-Carolina College. That Board consists of twenty-nine members; but the act establishing the Institution constitutes eleven a quorum, to transact the most important business within their jurisdiction. All the reasons which exist for adopting such a rule in the cases aboye a3. *61 luded to, apply in full force to the case now under consideration. The act ought to have such a construction, if not inconsistent with its letter or spirit, as will give it a practical operation. The number of managers' at the several places of election in this district, amount to thirty-nine. The act provides that, “ if any person shall be disposed to contest the election of any person so elected sheriff, he shall, on the day on which the votes are counted over, and the election declared, signify his intention in writing so to do to the managers, and the ground on which he intends to contest the same. And the said managers shall thereupon, and they are hereby authorized to hear and determine such1 contested election so to them stated ; provided, that no manager shall lie permitted to sit upo: the hearing and determining any contested election, wherein he may have been a candidate for the office of sheriff; and in case such ele'etion shall not be declared void, the said managers shall certify to the governor the person who is elected, who shall be commissioned in manner aforesaid. (2 Brevard, 226.) The language of the act seems to require the construction which has been given to it. The person intending to contest the election, is required to signify his intention to the managers on the day the votes arc counted over, which must necessarily mean the managers who have convened for that purpose.- It could not he intended that he should give notice on that day to those managers who might be thirty miles off, or even out of the district at the time. It seldom happens that all the managers can attend, and it is a matter of public notoriety:, that it more seldom happens that all do attend for the purpose of counting over the votes. The said managers, (which must mean the same managers to whom the notice was given) are also authorized to hear and determine the same. The object of the act is, to insure a prompt and speedy decision of the question. If the attendance of all should be required, the death, sickness, or absence of one from any other cause, would defeat the election, whenever it should be contested ; or even when there should be nó contest, if *62 it requires the whole number to count the votes. The difficulty of getting so many together, repels the idea of such a construction. The delay which it would almost necessarily produce would leave the district half the time without a sheriff, or cast the appointment on the governor; and according to the decision which has just taken place in the case of the State vs. W. M. Hudson, (post) an appointment by him, must continue for the’ whole constitutional term of office. Such a construction, therefore, would almost amount to a repeal of the act. The conclusion then follows, that a majority must constitute a quorum to transact the business ; and that decision is conclusive of the other question. For, according to the principle of all the cases referred to, a quorum possesses all the powers of the whole body; a majority of which quorum must of course govern. It is no where laid down that the majority must be unanimous, buthh'at they may act and decide. Thus Grotius says, (ut supra,) though there were no contracts or laws that regulate the manner of determining affairs, the majority would naturally have the right and authority of the whole ; so in 2 Rutherforth, B. 2, c. 1, $ 5, those who are absent are understood to devolve their power of voting upon those who do attend ; and that also is conformable to the general principles of our govern mant. The constitutions of this State and of the United States, declare that a majority shall be a quorum to do business ; but a majority of that quorum are sufficient to decide the most important question. It has already been stated that eleven constitute a quorum of the Board of Trustees of the College, which is composed of twenty-nine members. Six constitute a majority of that quorum, and the concurrence of that number, when only eleven are present, has always been held conclusive on the whole body. In the case of Rex vs. Foxcroft, (9 Burr. 1017,) the whole number of electors was twenty-five; out of that number twenty-one assembled pursuant to summons. A particular person was nominated, for whom nine voted. Eleven refused to vote at all. The person who received the nine votes, was held *63 duly elected. Lord Mansfield said, whenever electors are present, and do not vote at all, they virtually acquiesce in the election made by those who do. And Justice Wilmot, in the same case, mentioned the case of Rex vs. Withers, where, out of eleven voters, five voted and six refused; the Court held that the six virtually consented. See also the case of Sir Robert Salisbury Cotton vs. Davies, 1 Strange, 53, where it was held that a majority of the number present, was sufficient. It appears, therefore, that whether we consider the case upon principle or authority, we are led to the same result. Twenty tonstitute a majority of the whole number in this case. If a majority of the whole number be required, and a bare majority meet, they must be unanimous. But whether they would be unanimous or not, could not be ascertained until the case had been heard, and their opinions pronounced. If they/ should not agree, a second Court must be organized with all their prepossessions, and with the same uncertainty with regard to the result. Indeed the hopeless expectation of unanimity in such a body, where the least doubt could be excited, renders it equally expedient and necessary that the concurrence of a majority only should be required.
This brings me to the last question involved in this inquiry ; and that question has been clearly and distinctly settled in the case of Grier & Shackleford, from Georgetown. It is not now a question whether it was then correctly settled. The importance of adhering to the decisions of this Court is becoming more and more manifest every day. A greater evil can scarcely attend a country, than that the decisions of a Court of the last resort should be unstable and fluctuating. The very object of such a Court is to give certainty to what was before uncertain.— Its decisions become a .rule of property, and a rule of conduct, and ought to receive such support as to secure to them the unshaken confidence of the community. The character of this court has suffered from a mistaken notion which has been entertained, that the Judges have not paid sufficient respect to their own decisions. I feel authorized *64 to say that it is a mistaken notion ; because, after ten years experience, I have known but one case where the Court iias undertaken to review and reverse a former decision. The case of Rose & Daniel was reviewed and overruled by the case of Fasoux & Prather, (1 Nott & McCord, 296.) But it is to be observed that the case of Rose & Daniel war not finally disposed of when tile latter decision took plr.ee. It will also be further recollected that the revision of that ■ •.ase was not effected by an appeal brought up by counsel, but by a question reserved at the special instance ami recommendation of a very learned and influential member of the bench. And the Court yielded to it from the respect due to one so well entitled to their respect, and who justly possessed, in an eminent degree, the confidence of the community. I am aware that contradictory decisions have been made, and will continue to be made, until our decisions are regularly reported. The Judges cannot recollect all the questions that have been before them, and subsequent judges cannot have an intuitive knowledge of the decisions made by their predecessors. But when they come before us in an unquestionable shape, there are but. few instances in which they ought not to govern.
It has been contended in the course of the argument, that this question has not been settled in the case of Grier & Shackleford. But I have not been able to discover any distinction, except that that case goes farther than has been contended for in this. In that case, the counsel, apprehensive that a quo warranto could not be supported against the officer, as long as the proceedings of the managers remained unimpeached, applied for a mandamus against them at the same time. The Court discharged the rule on the managers, without requiring them to shew any cause, on the ground that, as the Legislature had constituted them a tribunal to u hear and determine” the question, their decision was final and conclusive, and this Court had no control over them. That furnished the. ground of dissent on my part. Not that I intended to prejudge the merits of the case ; but I thought the manager'5 *65 were subject to the mandatory process of this Court, and that the rule was prematurely discharged. The decision ot the Court, however, is to be respected. In this case no siich inviolability is contended for on the part of the managers. The ground of defence is, that the proceedings ought to have been against the managers, and not against the incumbent; and that he cannot be ousted’ of his office' ns long as their judgment remains unreversed. If, therefore, the case of Grier & Shackleford decided any thing, it decided the principle involved in this case. Some ambiguity appears in that case, from the circumstance of some of the Judges having spoken of it as a mandamus, while others treated it as á quo warranto. But when it is understood that the two cases wore taken up together, the my-lery is explained. If we are to be governed by the casi oi Grier & Shackleford, it is unnecessary to enquire how far the judgment of an inferior tribunal like this may be inquired into in this collateral way. It is sufficient for ibis Court that the question has been decided. Neither is it necessary to go into an inquiry how far the regularity of an election can be tried through the medium'of the person elected. I will barely refer to two cases on the subject, without expressing any opinion: The King vs. Meu, 3 Term Rep. 596. Symmers and others vs. The King, Cowper, 507. The decision of the managers then is conclusive upon all the grounds, except that which relates to die Court itself; and that question may' as well be settled on this motion as in any other way. It would be an idle ceremony to grant an information, when it appears upon its face that the object wished for cannot be obtained.
The decision therefore of the Court below, must be reversed.
Justices Colcock and Huger, concurred.